UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOE HOWIE,<br><br>Plaintiff,<br><br>v.<br><br>ERNST & YOUNG LLP, ERNST & YOUNG US LLP, and ERNST & YOUNG GLOBAL LIMITED,<br><br>Defendants. | 25-CV-5973 (RA)<br><br>MEMORANDUM OPINION & ORDER |

RONNIE ABRAMS, United States District Judge:

Plaintiff Joe Howie brings this action against Defendants Ernst & Young LLP ("EY LLP"), Ernst & Young US LLP ("EY US LLP" and, together with EY LLP, "EY US"), and Ernst & Young Global Limited ("EY Global"), asserting a retaliation claim under the Sarbanes-Oxley Act ("SOX"). Now before the Court is EY Global's motion to dismiss the Amended Complaint. It argues primarily that SOX does not apply to EY Global, which is neither a public company nor a contractor, subcontractor, or agent of one consistent with 18 U.S.C. § 1514A. For the reasons that follow, the motion is granted.

**BACKGROUND**

The Court draws the following facts from the Amended Complaint, Dkt. 41 (the "Amended Complaint" or "Am. Compl."), and materials incorporated therein or otherwise integral to it. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).[1] It accepts all well-pleaded factual allegations as true

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, omissions, and alterations.

for purposes of deciding this motion to dismiss. *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020). "EY is the global organization made up of the member firms of [EY Global]." Dkt. 57 ("Helfman Decl."), Ex. 2 ("EY Website") at 2.[2] Howie alleges that he "is a former partner in the U.S. Professional Practice Director group of EY," Am. Compl. ¶ 24, although at oral argument, he conceded that he was a partner "by title" solely of EY LLP and EY US LLP. *See* Dkt. 116 ("Tr.") at 43:15–45:24. According to Howie, EY Global, "a United Kingdom company limited by guarantee," Am. Compl. ¶ 31, serves as EY's "central coordinating entity" and is "responsible for setting the objectives, strategy and policies of the EY network." *Id.* ¶ 33. Defendants EY LLP and EY US LLP are both "member firms" of EY Global. *Id.* ¶¶ 30–31.

Howie relies on the EY Website and the EY US 2024 Transparency Report in describing EY Global's role. *See id.* ¶¶ 30–34, 38, 44; EY Website; Transp. Rep. He alleges that EY Global "sets strategy for the global network" and that the member firms are governed by its regulations. Am. Compl. ¶ 34. He further asserts that "the policies, strategies and practices promulgated and mandated by [EY Global] impact virtually every aspect of an EY member firm's business, including but not limited to their service of audit clients." *Id.* ¶ 38; *see also id.* ¶¶ 39–55. According to Howie, the EY entities "collectively serve multinational clients, including companies registered in the United States and those that are publicly traded in the US." *Id.* ¶ 57. EY US "operated under [EY Global]'s centralized policies, tools, resources, and systems." *Id.* ¶ 61. As a result, Howie maintains that all three Defendants "functioned as a single integrated employer." *Id.*

From June 2020 through June 2024, Howie served on a rotational assignment at EY Global pursuant to several Rotational Agreements between EY US LLP and EY Global. *Id.* ¶ 58. As part of this assignment, he co-led initiatives to evaluate policies, practices, and decisions in high-risk

[2] The Court considers the EY Website, as well as the EY US Transparency Report, Helfman Decl., Ex. 1 ("Transp. Rep."), as incorporated by reference into the Amended Complaint. *See* Am. Compl. ¶¶ 30–57.

client situations, as well as to develop improvements to client due diligence and risk assessment processes. *Id.* ¶ 71. From June 2021 through 2024, Howie internally raised "concerns about EY's connections to organized crime," as he observed that some clients were allegedly "controlled by or closely connected to organized crime syndicates and other criminal groups and activity." *Id.* ¶¶ 103–79. He also claims that some clients' public disclosures were "materially misleading across multiple periods" and that he "repeatedly reported" these alleged violations. *Id.* ¶¶ 184, 190. In addition, Howie expressed reservations about various firm policies and processes, *id.* ¶¶ 264–317, including "concerns regarding apparent legal and regulatory violations of federal securities laws and potential fraudulent activity by EY and its clients," *id.* ¶ 318.

According to Howie, Defendants demonstrated "indifference and hostility" towards his repeated internal complaints and retaliated against him by stripping him of leadership titles and removing him from leadership roles. *Id.* ¶¶ 319–30. On December 17, 2024, Howie filed a Charge of Retaliation with the Occupational Safety and Health Administration ("OSHA") in which he alleged violations of SOX's whistleblower provisions. *Id.* ¶ 19. On May 1, 2025, Howie was allegedly forced to withdraw from the partnership "for cause," purportedly for "disclosing attorney-client privileged communications to OSHA and refusing to cooperate in any effort to remediate such improper disclosures." *Id.* ¶ 342. Howie denies divulging any attorney-client privileged communications in his OSHA complaint. *Id.* On June 16, 2025, OSHA issued a "kick out" letter to Howie, advising him of his right to file an action under SOX in federal court. *Id.* ¶ 20.

Howie initiated this action on July 21, 2025, *see* Dkt. 1, and filed the Amended Complaint on September 19, 2025, *see* Dkt. 41. EY Global now moves to dismiss it for failure to state a claim. *See* Dkt. 56 ("Mot.").

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In deciding a motion to dismiss, the Court "constru[es] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)), although this "tenet . . . is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

EY Global's main argument for dismissal is that it is not an entity covered by SOX. In relevant part, Section 806 of SOX provides:

> [No public company], or any officer, employee, contractor, subcontractor, or agent of such company . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of [whistleblowing or other protected activity].

18 U.S.C. § 1514A(a). In *Lawson v. FMR LLC*, the Supreme Court held that this provision "protects whistleblowers" and "shelters employees of private contractors and subcontractors, just as it shelters employees of the public company served by the contractors and subcontractors." 571 U.S. 429, 432–33 (2014).

Howie does not dispute that EY Global is not a public company as defined under SOX. The question thus becomes whether EY Global is a "contractor" or "agent" of any such public

company.[3] It is well settled that "where the meaning of a statute's terms" is "unambiguous, the plain meaning of the statute controls its interpretation." *Can. Life Assurance Co. v. Converium Rückversicherung (Deutschland) AG*, 335 F.3d 52, 57 (2d Cir. 2003). Here, the plain meaning of the words "contractor" and "agent" is unambiguous. "Contractor" is defined as "[a] party to a contract," or "one who contracts to do work for or supply goods to another." *Contractor*, Black's Law Dictionary (12th ed. 2024); *see also Contractor*, Merriam-Webster's Collegiate Dictionary (12th ed. 2025) (defining "contractor" as "one that contracts or is party to a contract"); *cf. Liberty Ins. Corp. v. WSP USA, Inc.*, 2018 WL 3148358, at *4 (S.D.N.Y. June 27, 2018) ("The term 'construction contractor' has an unambiguous plain meaning . . . . a person or company that agrees to do work for another company that involves acts of building."). Because the Amended Complaint does not allege that EY Global contracted with any public company, Howie has not plausibly alleged that it was a "contractor" of a public company. Nor has he plausibly alleged that EY Global was an "agent" of any public company, because he does not allege that EY Global was "authorized to act for or in place of" any such public company. *Agent*, Black's Law Dictionary (12th ed. 2024); *see also Agent*, Merriam-Webster's Collegiate Dictionary (12th ed. 2025) (similar).

Howie nonetheless insists that EY Global is covered by SOX because it "functioned as a single integrated employer" with EY LLP and EY US LLP. Dkt. 64 ("Opp'n") at 4, 11–17; Am. Compl. ¶¶ 61, 350. At oral argument, he pressed that argument further, characterizing the combined EY entities not just as a "single integrated employer," but as a "single enterprise." Tr.

[3] At oral argument, Howie asserted for the first time that EY Global was also a "subcontractor" of U.S. public companies through its work in support of EY member firms, including EY US, in their service to these public companies. *See* Tr. at 14, 17. Courts generally do not consider arguments raised for the first time during oral argument and the Court will not consider this one. *See, e.g.*, *Saray Dokum v. MTS Logistics, Inc.*, 2021 WL 1199470, at *7 (S.D.N.Y. Mar. 30, 2021) (collecting cases).

at 7:8–20.[4] Given that "EY US" was indisputably a "contractor" under SOX and, in Howie's view, was "a single enterprise" with EY Global, he argues that EY Global "can't insulate itself at this stage." *Id.* at 7:19–20. The Court disagrees.

Howie identifies no authority for extending SOX liability to an entity that is not itself a "contractor, subcontractor, or agent" of a public company but constitutes a "single integrated employer" or a "single enterprise" with such a covered entity. Indeed, he admitted as much at oral argument. *Id.* at 7:21–8:3. Howie instead relies on cases addressing whether related entities may be treated as a single employer in employment actions. In that context, courts may treat "the employees of a corporate entity as the employees of a related entity under extraordinary circumstances." *Juhua Han v. Kuni's Corp.*, 2020 WL 2614726, at *7 (S.D.N.Y. May 22, 2020). Accordingly, "to prevail in an employment action against a defendant who is not the plaintiff's direct employer, the plaintiff must establish that the defendant is part of an 'integrated enterprise' with the employer, thus making one liable for the illegal acts of the other." *Id.* (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000)). But whether EY Global was Howie's employer is a distinct issue from whether it is an entity covered by SOX. And there is simply no legal support for Howie's novel contention that this employment law doctrine can extend SOX liability to an otherwise uncovered entity.

The very materials on which Howie relies, moreover, undercut his contention that the EY entities constitute a "single enterprise." The EY Website states that EY Global "does not control, manage or hold any ownership interest in any EY member firms"; that "EY is not a single entity, partnership nor corporate structure"; that "[t]he member firms are not subsidiaries or branches of

---

[4] At oral argument, Howie's counsel represented that the Amended Complaint used the phrase "single enterprise." Tr. at 13:2–25. Not so. Although it does allege that "EY LLP, EY US LLP, and [EY Global] functioned as a single integrated employer," Am. Compl. ¶ 61, the phrase "single enterprise" appears nowhere in it.

an ultimate global parent"; that "[e]ach member of the EY organization is a separate and distinct legal entity"; and that "[e]ach member firm is solely responsible for its own acts and omissions." EY Website at 2–3. The EY US Transparency Report similarly states that EY Global "does not provide services" and that "each EY member firm is a separate legal entity." Transp. Rep. at 5. These materials undermine the plausibility of Howie's conclusory contention that EY Global and the other Defendants constitute a "single enterprise."

Courts in this Circuit have rejected similar efforts to treat the entities within a global accounting network as a single entity in other contexts. "As applicable to auditors, this District has 'declined to treat different firms as a single entity, holding them liable for one another's acts, simply because they shared an associational name and/or collaborated on certain aspects of a transaction.'" *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 147 (S.D.N.Y. 2021) (quoting *Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, 2004 WL 112948, at *3 (S.D.N.Y. Jan. 22, 2004)). In *In re Asia Pulp & Paper Securities Litigation*, for example, the court dismissed claims against the global coordinating entity for the Andersen network of accounting firms based on a member firm's audit work. 293 F. Supp. 2d 391, 393, 396 (S.D.N.Y. 2003). The court rejected the plaintiffs' "one-firm" theory despite allegations of "global setting of professional standards" and "maintenance of a global infrastructure and administration," emphasizing the absence of allegations that the global entity could control or influence the particular audits. *Id.*

Howie's reliance on *In re Parmalat Securities Litigation*, 594 F. Supp. 2d 444 (S.D.N.Y. 2009), and *In re Parmalat Securities Litigation*, 598 F. Supp. 2d 569 (S.D.N.Y. 2009), *see* Opp'n at 16–17; Tr. at 16, is also unavailing. Those decisions found genuine disputes of material fact as to whether Deloitte Italy and Grant Thornton Italy acted as agents of their respective global

coordinating entities, potentially subjecting those global entities to vicarious liability under the securities laws. Even assuming that EY LLP and EY US LLP acted as EY Global's agents, however, that relationship would not establish that they should be treated as a "single enterprise" with EY Global under SOX. Nor could it establish that EY Global was itself a "contractor, subcontractor, or agent" of a public company. *See* 18 U.S.C. § 1514A(a).

In light of the Court's conclusion that Howie has not plausibly alleged that EY Global is an entity covered by SOX, it need not address EY Global's alternative arguments.

**CONCLUSION**

For the reasons stated above, EY Global's motion to dismiss is granted. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 55.

SO ORDERED.

Dated: September 30, 2026
New York, New York

Ronnie Abrams
United States District Judge